Reed, J.,
after stating the case, delivered the opinion of the court.
The'only question presented is the correctness of the judgment of the court in sustaining the demurrers. In other words, whether the employer is liable in damages under the statute for the killing of a person by a servant or employee under the circumstances as stated in the complaint. The provision of the statute upon which the action is based is sec. 2, chap. 27, Genl. Stat., entitled “ Damages.” — “ Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death *99 had not ensued, shall he liable to an action for damages notwithstanding the death of the party injured.” An examination of the section of the statute under consideration will show that it provides generally for compensation, “whenever the death of a person shall be caused by a wrongful act, neglect or default of another.” The circumstances must be such as to entitle the injured party to damages if death had not ensued, but affording no guide as to the circumstances under which the principal or master shall be held liable, hence, the liability must be determined by the rules and principles of the common law.
In 1880, 43 & 44 Vict., chap. 42, an act entitled “ The Employers Liability Act” was passed by the English parliament, which, while more elaborate, explicit and detailed than our statute, legally amounts to the same thing, and in fixing the liability the courts in every instance are compelled to have recourse to the common law adjudications.
The solution of the question presented is one of great difficulty. While the general principles and rules of law controlling in such cases are so clearly stated as to render them almost axiomatic, and each rule is stated many times in different language, the principle and result being the same, the trouble has been, and still is, the application of the rules. The conflicting decisions in applying the principles are so numerous as to produce confusion as soon as an examination is undertaken.
The liability of the master for the wrongful acts of a servant is predicated upon the maxim “ qui facit per aliumfaeit per se,” and is in direct conflict with the broad and universal doctrine of personal liability for wrongs perpetrated; consequently, in applying it great care is taken in restricting it clearly within legal limits. The great multiplication of corporations, where all acts are necessarily performed by agents or servants, has latterly led to the extension and widening of the application in many cases, in order to afford the requisite protection, and from such necessity courts have gradually *100 extended the principle to cover cases not formerly supposed to be embraced..
. The complaint in the case is very carefully drawn. In order to apply the law an analysis of the complaint is necessary.
First.' — It is alleged that Reef & Nuckolls, a firm composed of J. S. Reef, Emmet Nuckolls and G. Harvey Nuckolls, “ were buying and selling, pasturing, herding, raising and handling, slaughtering and dealing in cattle, beef and stock.” In the second paragraph it is alleged that “ Wm. E. Nuckolls was serving said defendants as an employee, agent or servant at and upon the said headquarters, aforesaid; that he worked and labored for said defendants thereon in farming and herding the stock of the said defendants.” * * *
Second. —Taking up the other branch — it is alleged in the first paragraph, “ that in their cattle and stock business, Em-met and C. Harvey Nuckolls took possession of and claimed a large tract of the unsurveyed government lands * * *, which said tract said defendants occupied and claimed as their headquarters, or home ranch for their said cattle and stock business, and occupied and improved the same by and through their agents and employees and the said G. Harvey Nuckolls, and pretended to own the same aud have the right to sell and dispose of the same; but plaintiff alleges that said defendants so claimed and occupied the said public lands, without a legal right, under or by virtue of the laws of the United States, or of the state of Colorado.” In the third paragraph it is alleged that Wm. E. Nuckolls, who was engaged, employed and armed by defendants “ to hold and maintain them in their possession of said land,” shot and killed Sagers for a pretended trespass upon the land. Though not fully and affirmatively stated, it is fairly inferable, that the trouble and. controversy resulting in the killing grew out of the possession of the land, for it is said, in speaking of the land, “ George W. Sagers, the then lawful claimant of a portion thereof.”
The sufficiency of the complaint, in the first instance, must be tested by the following general principle, controlling in' *101 all cases of this character: — “ Was the act done under such circumstances that under the employment the master can he said to have authorized the act ? For if he did not, either in fact or in law, he cannot be made chargeable for its consequences ; because not having been done under authority from him, express or implied, it can in no sense be said to be his act, and the maxim-does not apply.” Wood’s Mast. & Serv’t, § 279. The test of the liability of the master in all cases is whether the act was done by his express authority or fairly implied from the nature of the employment and the duties incident to it.
See McManus v. Crickett, 1 East, 106, which is a leading case on the question under discussion. Among the earliest reported cases is that of Middleton v. Fowler, Salk. 282. Holt, C. J. said, “ that no master is chargeable with the acts óf his servant, but when he acts in the execution of the authority given him.”
The rule is clearly laid down in 1 Black. Com., 429, 431. It is said: “ The master is answerable for the act of his servant, if done by his command either expressly given or implied;” again, “if a servant by his negligence, does any damage to a stranger, the master shall answer for his neglect; but the damage must be done while he is actually employed in his master’s service, otherwise, the servant shall answer for his own misbehavior.”
In Foster v. Essex Bank, 17 Mass. 479, the court said: — ' “ It may be inferred from the cases as a general rule, that to make the master liable for any act of fraud or negligence done by his servant, the act must be done in the course of his employment, and that if he steps out of it to do wrong, either fraudulently or feloniously, towards another, the master is no more liable than any stranger.” See Mech. Bank v. Bank of Columbia, 5 Wheat. 326; Ellis v. Turner, 8 Term Rep. 533.
In Cooley on Torts, 625, it is said, “ That which the superior has put the inferior in motion to do, must be regarded ás done by the superior himself; ” and at page 627, “ but the *102 liability of the master for intentional acts which constitute legal wrongs, can only arise when that which is done is within the real or apparent scope of the master’s business. It does not arise when the servant has' stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature.of his employment, to have authorized or expected the servant to do.” See also Ill. Cent. R. R. Co. v. Downey, 18 Ill. 258; Evansville R. R. Co. v. Baum, 26 Ind. 70; Crocker v. New Lond. etc. Co., 24 Conn. 249; Wright v. Wilcox, 19 Wend. (N. Y.) 343; Richmond Turnpike Co. v. Vanderbilt, 1 Hill, 480, s. c., 2 N. Y. 479.
The next, and one of the most important distinctions and considerations is, that to render the master liable the act must be done in the prosecution of the service of the master. Any deviation so as to render it the act of the servant, the responsibility of the master ceases, and the fact of the relation of master and servant has no bearing.
It is said in Pickens v. Dricker, 21 Ohio St. 212: — “ The person for whose acts he is sought to be charged must at the time when the act complained of was done, not only have been acting for him, but must also have been authorized by him, either expressly or impliedly, to do the act.” It follows that there must be an employment — the relation-of master and servant must exist; that the wrong of the servant was incidental to or in the line of his employment and within the authority given. It is also imperative that the empktyment be in the prosecution of a lawful business. In a conspiracy or confederation of individuals to do criminal acts or acts in violation of the law, there is, and can be no such relation as master and servant — all are principals — they are all jointly and severally responsible for the legal consequences of the wrong perpetrated. In cases where the master is attempted to be hold liable for the acts of the servant, it is a well settled rule of law that, where the servant acts in obedience to an express order given by the master, the master is liable for all the consequences of the servant’s acts, either civilly or *103 criminally. Wood Mast. & Servt. § 278; Rex v. Bleasdale, 2 Car. & Kir. 766; Rex v. Michael, 9 Car. & P. 357; Rex v. Palmer, 1 New Rep. 97.
The troublesome question in all the cases is not of express but implied 'authority, whether the act done was so far incidental to the service for which he was employed that it may be supposed to have been done “ in the line of his duty and in the furtherance of the master's business.”
A carefully considered case involving this question is that of Phelon v. Stiles, 43 Conn. 426. See also Rounds v. Del., etc., R. R. Co., 64 N. Y. 129.
A well settled principle of law lying apparently at the very foundation of this action is, “ That a servant can have no implied authority to do that which it could not be lawful under any circumstances for either him or his employer to do.” Shear. & Red. on Neg., § 61; Lyons v. Martin, 8 Adol. & El. 512; Poulton v. London, etc., Ry. Co., L. Rep. 2 Q. B. 534; Steamboat Co. v. Railway Co., 24 Conn. 40; Church v. Mansfield, 20 Conn. 284; 2 Hil. on Torts, chap. 40, § 6 a.
In recent English decisions of cases decided since statutes 43 & 44 Vict., referred to above, an important test of the liability' of the principal seems to be whether he had the authority to do the act performed by the servant, and if he had not there could be no authority implied from him to the servant, consequently tile principal would not be- liable for the act of the servant on the ground of an implied authority; and to render a principal liable for the acts of the servant,'in a matter that' could not lawfully be done by himself, there can be no implied authority — there must be an express authority.
In Poulton v. London & S. W. Ry. Co., L. R. 2 Q. B. 534 supra, Blackburn, J., said: “It is not enough that the act should be for the benefit of the piaster, but it must be in the ordinary course of business in order that an authority to do it may be implied.” See Edwards v. London & N. W. Ry. Co., L. R. 5 C. P. 445; Lucas v. Mason, L. R. 10 Exc. Cases, 251.
See further on points stated above: Rourke v. White Moss Coll. Co., L. R. 1 C. P. Div. 556; s. c., L. R. 2 C. P. Div. *104 205; Rayner v. Mitchell, L. R. 2 C. P. Div. 357; Storey v. Ashton, L. R. 4 Q. B. 476; Allen v. London & S. W. Ry. Co., L. R. 6 Q. B. 65; Cobb v. Columbia, etc. C. R. Co., Sup. Court of Georgia, Sept., 1892; Goddard v. Railway Co., 57 Me. 202.
The following conclusions are inevitable from the allegations of the complaint:
First. That the business of Reef & Nuckolls as a firm, and of Reef as an individual, was legitimate and lawful.
Second. That William E. Nuckolls as the servant of Reef & Nuckolls in farming and handling stock was employed for legal and legitimate service.
Third. That the land attempted to be held was claimed by Emmet and G. Harvey Nuckolls, and that neither the firm of Reef & Nuckolls nor Reef individually had any connection with it whatever.
Fourth. That the killing grew out of a controversy over the possession of land claimed only by Emmet and G. Harvey N uckolls, and was in no way connected with the employment of William E.'Nuckolls by the firm of Reef & Nuckolls, nor in any way incidental to or growing out of it. This disposes of the case as far as the firm of Reef & Nuckolls, and Reef individually, are concerned. As to them no cause of action, whatever, is shown.
Taking up the other branch of the Case, it is alleged that Emmet and G. Harvey Nuckolls took illegal possession of a large tract of unsurveyed government land, a part of which was claimed by the deceased; that they and their servants were armed, and were, by force and arms, maintaining the illegal possession of the land, and that William E., in attempting to maintain such possession for Emmet and G. Harvey Nuckolls, shot and killed Sagers. No hiring of William E. by Emmet and G. Plarvey Nuckolls is alleged; no relation of master and servant alleged as existing in the attempted holding of the land. The employment alleged, as before stated, was by Reef and Nuckolls in a lawful business. If any liability of any of the parties can be predicated upon the *105 supposed relation of master' and servant, it must be that of Emmet and Or. Harvey Nuckolls, in whose interest the alleged wrongs were perpetrated, in .a'matter entirely distinct and separate and disconnected with the business of the firm.
Applying the principles of law to the facts and circumstances as stated, it is obvious that Emmet and G. Harvey Nuckolls cannot be held liable for the act of the killing. First, it is indispensable that the relation of master and servant existed in the line of employment in which the trouble arose and the wrong was perpetrated. No employment by the parties for any such business or purpose is alleged. It is only alleged as being incidental to his employment by Reef & Nuckolls in farming and the handling of cattle. Second, as above shown, to render the employer liable the employment must be lawful and the business lawful. The wrong and fraud upon the government and the public by taking illegal possession of a large tract of the public domain, preventing its occupation, settlement and sale by and to those: who had legal right to occupy under the laws of congress, and .maintaining such possession by force and violence, resulting in the taking of life, cannot be regarded as the prosecution of a lawful business and one in which the relation of master and servant could have existence. Under such circumstances all are principals, confederates, in the prosecution of a criminal enterprise, and all jointly, or each individually, may be held criminally responsible for any wrong perpetrated.
It follows, that guarding and protecting the illegal possession of the land claimed by the individuals as alleged was not an incident of the alleged employment, but a criminal and wrongful act as a confederate or a volunteer, in which the question of master and servant could have no place. It matters not, as stated in the complaint, that it was a duty required by others by virtue of his empkyment that he was armed by his employers, and even had express orders to eject or kill any person invading the possession.
The remedy for such criminal acts cannot be found in a *106 civil suit for damages, but must be reached by another branch of the law.
I have carefully examined all the authorities cited, supposed to establish the liability of the supposed principals, but the case under consideration is clearly distinguishable. In each and every of those cases it will be seen that the relation of master and servant existed; that the employment was in legal and legitimate business, and that the wrong complained of grew out of the negligence or wanton and excessive exercise of the authority supposed to have been expressly or impliedly conferred, as pertaining to the lawful employment, or as incidental to it. In every instance where the servant stepped out of the line of his employment for his own purposes or in performing acts for another, it has been held that the liability was personal and the doctrine of “ respondeat superior ” had no application.
The judgment of the district court in sustaining the demurrer must be affirmed.

Affirmed.